IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. PX-17-0382 |
| | * | |
| JAIRO ARNALDO JACOME | * | |
| a/k/a "Abuelo" | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*\*\*\*\*\*\*

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION *IN LIMINE*
TO PRECLUDE WITNESS TESTIMONY (ECF NO. 813)**

On August 23, defendant Jairo Jacome ("defendant") moved in limine "to preclude the Government from offering, and preventing its witnesses from implicating him in an incident on or about May 10, 2014" (ECF No 813.) The incident in question is the murder of a supposed gang rival by members of MS-13 in the vicinity of Adelphi, Maryland, as described by Government's witness Carlos Tejada-Cruz. The defendant cites two bases for his motion – that he has not received sufficient notice of the evidence, and that the probative value of the evidence is outweighed by its prejudicial effect. Because (1) the defendant has known for more than eight months that Tejada-Cruz had implicated him in this murder, (2) the evidence is directly relevant to the racketeering conspiracy charged in Count One; and (3) the probative value of the evidence is not "substantially outweighed" by a danger of unfair prejudice, the defendant's motion should be denied.

1. *The defendant has sufficient notice that the Government will present evidence of his involvement in the Adelphi murder.*

The Defendant attaches to his motion an excerpt from testimony given by Tejada-Cruz at the trial of his co-defendants, Junior Noe Alvarado-Requeno and Miguel Angel Corea-Diaz. (ECF 813-1.) During that testimony, Tejada-Cruz described participating in the murder of a young African-American man who had been identified as associating with "ADP," a rival gang of MS-13 based in

1

Adelphi. When describing who else participated in the murder, Tejada-Cruz said that "there was some homeboys" present, referring to a rank within MS-13. Government counsel followed up by asking "And who were the homeboys? If you remember, who were the homeboys?" to which Tejada-Cruz responded "Berdugo from LPS and Abuelo." (ECF No. 813-1 at 5.) As charged in the Twelfth Superseding Indictment, "Abuelo" is the alias of defendant Jacome. (ECF No. 610.)

Tejada-Cruz testified in open court on November 9, 2021, and a written transcript of his testimony was immediately ordered by the Government and produced to the defense on December 9, 2021. Tejada-Cruz's testimony included specific information about the circumstances of the alleged homicide, including the date, location, and names of other participants – enough detail to put the defendant on notice of the nature of the offense. By the time that testimony begins in this trial, defendant Jacome will have had the transcript implicating him in this incident for more than nine months. Nine months is sufficient time for the defendant to interview witnesses, gather information, and prepare a defense, including any potential alibi.

Moreover, since the defendant filed his motion, the government has made additional disclosures related to this incident. On August 24, 2022 – the day after the motion was filed – government agents and attorneys met with Tejada-Cruz for a previously scheduled interview. Tejada-Cruz and the prosecution team have not met since he testified at the November 2021 trial. Immediately after the interview, the government disclosed a draft report summarizing the meeting, with a focus on the defendant's role in the May 10, 2014 homicide. (See Attachment 1). This report adds considerable detail to Tejada-Cruz's previous allegation, which was not fully developed in testimony because Jacome was not a defendant at the previous trial. With this additional disclosure, made immediately following the interview and three weeks before Tejada-Cruz is likely to take the stand[1], the defendant

---

[1] In comparison, the Court's Amended Pretrial Scheduling Order in the previous trial set a deadline of October 15, 2021 – ten days before trial – to disclose Jencks evidence. (ECF No. 609.)

has certainly received sufficient notice about Tejada-Cruz's allegation of his involvement in this murder. The defendant has cited no authority for his proposed remedy, that the witness be barred from testifying that "Abuelo" participated in the murder, even if that is his truthful recollection on the witness stand. Defendant's counsel is free to cross-examine Tejada-Cruz about this murder. Exclusion of the testimony is inappropriate.

> 2. *Tejada-Cruz's testimony about Abuelo's involvement in the Adelphi murder is probative of the defendant's guilt in the racketeering conspiracy charged in Count One.*

The defendant misapprehends the nature of the RICO charges again him when he contends that "this incident predates any listed overt acts in furtherance of the charged conspiracy in this matter and he is not substantively charged with this act." (ECF No. 813 at 1.) Rather, while the defendant is not *separately* charged with murder for the incident in question, evidence of his participation in the murder tends to prove the elements of the RICO conspiracy with which he *is* charged. That is, to prove Count One, the government must establish, among other things, that "the defendant agreed a co-conspirator did or would knowingly participate in the conduct of the affairs of the enterprise through *a pattern of racketeering activity*, as described in the Indictment; that is, a co-conspirator did or would commit at least two acts of racketeering activity." (emphasis added) (ECF No. 690 at 42, Jury Instruction No. 57, Count One, RICO Conspiracy – Elements of the Offense). As defined in 18 U.S.C. §1961(1)(A), "racketeering activity" includes any act involving murder.

To establish a "pattern" of racketeering activity, the government must prove that the defendant agreed that a co-conspirator, *who could be the defendant himself*, did or would intentionally commit, or cause to be committed, or aid and abet the commission of, two or more racketeering acts of the type or types of racketeering activity alleged in the Indictment[.]" (ECF No. 690 at 48, Jury Instruction No. 62, Count One – Fifth Element – Pattern of Racketeering Activity).

The Twelfth Superseding Indictment alleges that the racketeering activity in this case consisted of multiple acts involving murder, in violation of the laws of Maryland and other states. (ECF No. 610 at 9.) Therefore, evidence that tends to show that the defendant himself committed a murder, such as the testimony of Tejada-Cruz, goes towards establishing the *pattern* of racketeering activity.

Moreover, it does not matter that this murder is not among the overt acts specifically enumerated in the indictment. These overt acts – which are distinct from racketeering acts that make up a pattern of racketeering activity—are intended to be exemplary, not exhaustive. *See United States v. Palacios*, 677 F.3d 234, 245 (4th Cir. 2012) (district court did not err in allowing government witnesses to testify about defendant's prior robbery and firing of a gun even though those acts were not mentioned in the indictment, because the testimony "relate[d] to Palacios's participation in MS–13 and can be properly characterized as 'acts committed in furtherance of the conspiracy'" (citation omitted). The indictment states that "the defendants and their co-conspirators performed, participated in, and committed the following acts, *among others[.]*" (ECF No. 610 at 12) (emphasis added). The government is not required to outline in the indictment all the overt acts done in furtherance of the conspiracy; indeed, it is not required to list any overt acts at all. *See, e.g. Salinas v. United States*, 522 U.S. 52, 63 (1997); *United States v. Mouzone*, 687 F.3d 207 (4th Cir. 2012).

The fact that the murder occurred on May 10, 2014 also does not place it outside the scope of the indictment. The indictment charges that the racketeering conspiracy began "on a date unknown to the Grand Jury, *but at least prior to* in or about 2015." (ECF No. 610 at 9) (emphasis added). Further, the indictment alleges that the "[i]n the United States, MS-13 has been functioning since at least the 1980s." (ECF No. 610 at 2.) In fact, to prove the existence of the enterprise—another element of racketeering conspiracy—the government must show that there was or would be "a group of people characterized by . . . personnel who function as a continuing unit *over a period of time* to pursue the enterprise's purpose." (ECF No. 690 at 45, Jury Instruction No. 58 (Count One —First Element –

Existence of an Enterprise) (emphasis added). Evidence that a group of people -- including the defendant and Tejada-Cruz – participated in the murder of a gang rival on behalf of MS-13 less than seven months prior to 2015 is direct evidence of the existence of an enterprise with sufficient longevity to achieve its purposes. Similarly, to establish a pattern of racketeering activity, the government must show that "the racketeering activity *must have extended over a substantial period of time*, or pose a threat of continued criminal activity." (ECF No. 690 at 49, Jury Instruction No. 62, Count One — Fifth Element – Pattern of Racketeering Activity) (emphasis added). Evidence that the defendant committed a murder on behalf of the gang in 2014 helps establish that the racketeering activity extended over a substantial period of time.

3. *The probative value of the Adelphi murder is not substantially outweighed by the danger of unfair prejudice*

Under Rule 403 of the Federal Rules of Evidence, the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice." However, "[t]he mere fact that the evidence will damage the defendant's case is not enough—the evidence must be *unfairly* prejudicial, and the unfair prejudice must *substantially* outweigh the probative value of the evidence." *United States v. Williams*, 445 F.3d 724, 730 (4th Cir. 2006) (emphasis in original). As discussed above, the probative value of the evidence is significant—it is direct eyewitness testimony that goes directly to multiple elements of a charged offense. And while testimony that the defendant participated in a murder will certainly prejudice him, it will not do so unfairly. This trial is going to involve a lot of difficult and emotional testimony. The jury will hear about numerous acts of violence, including a separate murder of a fourteen-year-old committed by this defendant. They will see crime scene and autopsy photos. They will hear fact witness testimony from the mothers of murder victims. In the context of this case, the testimony of Mr. Tejada-Cruz is not likely to unfairly inflame the passions of the jury in the way that it might in a drug conspiracy, felon in possession, or wire fraud

trial. *United States v. Matera*, 489 F.3d 115, 121 (2d Cir. 2007) ("When a defendant engages in a criminal enterprise which involves very serious crimes, there is a likelihood that evidence proving the existence of the enterprise through its acts will involve a considerable degree of prejudice. Nonetheless, the evidence may be of important probative value in proving the enterprise."). It is critical that the jury understand the full scope of the violence committed by these defendants and this enterprise in order for the government to meet its burden of establishing a pattern of racketeering activity. Because of the nature of a cooperator-based investigation and the sheer amount of criminal activity that these defendants were involved in, the government has continued to learn new information from its witnesses during trial preparation. The government has endeavored to provide that information to the defense in a timely manner and here it has done so. If a witness has information that one of these defendants participated in the murder of a gang rival—and has testified under oath in a public trial about it nearly a year before—it would be an extraordinary measure to bar him from testifying about it in this trial. For these reasons, none of the grounds cited by defendant support directing a witness not to tell the jury the whole truth, and the defendant's motion should be denied.

        Respectfully submitted,

        Erek L. Barron
        United States Attorney

By:     /s/
        Timothy Hagan
        Christopher Sarma
        Assistant United States Attorneys

        Alexander Gottfried
        Trial Attorney
        Organized Crime and Gang Section

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2022, the foregoing was filed electronically via CM/ECF and thus served on defense counsel.

                                                                      /s/
                                                Timothy Hagan
                                                Assistant United States Attorney